UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA H.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No.:  20cv2186-RBB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 13] AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 14]** |

On November 6, 2020, Plaintiff Teresa H.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance benefits [ECF No. 1].[2] Plaintiff consented to have this Court conduct all proceedings in this case on January 7,

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. See S.D. Cal. Civ. R. 7.1(e)(6)(b).
[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

2021 [ECF No. 8].³  Defendant filed the Administrative Record on June 15, 2021 [ECF No. 11].  On July 20, 2021, Plaintiff filed a Motion for Summary Judgment [ECF No. 13].  Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment on August 23, 2021 [ECF No. 14].  Plaintiff filed a Notice of New Authority on September 14, 2021 [ECF No. 15].

For the following reasons, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

## I.   BACKGROUND

Plaintiff Teresa H. was born in 1960 and previously worked as a driver for a taxi and airport service which required her to lift luggage, groceries, and other items.  (Admin. R. 32, 44, 158, ECF No. 11.)⁴  She also assisted her husband with his coin-operated vending business by counting coins and completing collection receipts.  (Id. at 32-33.)  On or about December 12, 2018, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act.  (Id. at 15, 158-59.)  She alleged that she had been disabled since November 3, 2017, due to impairments in her lower back, neck, and shoulder.  (Id. at 172, 175.)  Teresa H.'s application was denied on initial review and again on reconsideration.  (Id. at 74-78, 82-86.)  An administrative hearing was conducted on March 11, 2020, by Administrative Law Judge ("ALJ") Mary Ann Poulose.  (Id. at 15, 27.)  On May 26, 2020, the ALJ issued a decision and concluded that Teresa H. was not disabled.  (Id. at 15-23.)  Plaintiff requested a review of the ALJ's

---

³ The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.

⁴ The administrative record is filed on the Court's docket as multiple attachments.  The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").  For all other documents, the Court cites to the page numbers affixed by CM/ECF.

decision; the Appeals Council denied the request on September 8, 2020.  (Id. at 1-3.)  She then commenced this action pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C.A. § 405(g), 421(d) (West 2011).  The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'"  Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___ U.S. ___, ___, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).  The district court may affirm, modify, or reverse the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.

To qualify for disability benefits under the Social Security Act, a claimant must show two things:  (1) The applicant suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the

applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. § 423(d)(1)(A), (2)(A) (West 2011).  An applicant must meet both requirements to be classified as "disabled."  Id.  The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520.  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b) (2019).  Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities.  If not, the claimant is not disabled.  Id. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  Id. § 404.1520(d).  If not, the claimant s residual functional capacity is assessed and the evaluation proceeds to step four.  Id. § 404.1520(e).  Fourth, the Commissioner determines whether the claimant can do his or her past relevant work.  If the claimant can do their past work, benefits are denied.  Id. § 404.1520(f).  If the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Id. § 404.1520(g).  If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied.  Id.

## III. DISCUSSION

### A. ALJ's Decision

In her decision, ALJ Poulose employed the five-step sequential analysis set forth in 20 C.F.R. § 404.1520. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 3, 2017, her alleged onset date (step one). (Admin. R. 17, ECF No. 11.) She concluded that Teresa H. had severe impairments−a history of prior cervical spine fusion and degenerative disc disease of the lumbar spine. (Id.)[5] The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (step three). (Id. at 19.) She then found that Teresa H. retained the residual functional capacity to perform medium work, except with only frequent climbing, crouching, crawling, stooping, and kneeling. (Id.) ALJ Poulose next determined that Plaintiff was able to perform her past relevant work as a taxi driver and coin collector (step four). (Id. at 22.) The ALJ accordingly found that Teresa H. had not been under a disability from November 3, 2017, through the date of her decision. (Id. at 23.)

### B. Plaintiff's Testimony Regarding the Severity of her Symptoms

At the administrative hearing, Plaintiff testified that she stopped working as a driver because "I hurt my back really bad and I just couldn't do it." (Id. at 33.) She stated that she only drives when necessary because driving more than twenty or thirty minutes causes her back and shoulder to hurt and her leg to fall asleep. (Id. at 34.) On a typical day, she feeds her dogs and cat if her husband has not done it, sometimes does laundry, and cooks and rinses dishes for her mother. (Id. at 34-35.) Teresa H. stated that she is able to take care of her personal needs, including getting dressed and showering.

---

[5] The ALJ found Plaintiff's kidney stones, supraventricular tachycardia, migraines, thyroid cancer status-post thyroidectomies, and rotator cuff syndrome are non-severe impairments. (Admin. R. 18, ECF No. 11.)

(Id. at 35.) She testified that she sweeps and vacuums occasionally, rarely takes out the trash, and no longer takes the dogs for a walk. (Id. at 36.) She attends religious services and does her own shopping but experiences lightheadedness, back pain, and swelling in her ankles if she stands or walks for more than thirty minutes. (Id. at 36-37.) Plaintiff stated that she takes Norco, Meloxicam, Flexeril, two blood pressure medications, thyroid replacement, calcium, Imitrex, and over-the-counter medications. (Id. at 39.) She experiences migraines six times a month. (Id. at 41.) She uses a TENS (transcutaneous electrical nerve stimulation) unit for her mid-back area. (Id. at 42.)

### C.   ALJ's Analysis of Plaintiff's Subjective Symptoms

Plaintiff's sole contention is that the ALJ failed to articulate clear and convincing reasons to reject her testimony regarding the severity of her symptoms. (Pl.'s Mot. Attach. #1 Mem. P. & A. 5-17, ECF No. 13.) An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (citing Garrison, 759 F.3d at 1014-15); see also SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); see 20 C.F.R. § 405.1529(b) (2019). In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms alleged nor is she required to produce objective evidence of the pain or its severity. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15) ("[S]he need only show that it could reasonably have caused some degree of the symptom"). Second, once an underlying physical or mental impairment that could reasonably be expected to produce an individual's symptoms is established, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which they limit the individual's ability to perform work-related activities. SSR 16-3P, 2017 WL 5180304, at *3; 20

C.F.R. § 404.1529(c). It is the responsibility of the ALJ to "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

Here, ALJ Poulose determined that Teresa H. satisfied step one of the two-step analysis. (Admin. R. 21, ECF No. 11.) At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects or her symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Id.) Under well-established case law, when the ALJ finds that a claimant "is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015)). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Lambert, 980 F.3d at 1277 (citing Treichler, 775 F.3d at 1102).

Relying on the Ninth Circuit's decision in Lambert, Plaintiff contends, "[T]he ALJ, aside from a general discussion of the medical evidence, appears to offer insufficient issues for finding [Plaintiff's] testimony regarding her symptoms not consistent with the record." (Pl.'s Mot. Attach. #1 Mem. P. & A. 8, ECF No. 13, citing Lambert, 980 F.3d at 1278.) The ALJ articulated four reasons for discounting the severity of Plaintiff's subjective symptoms: (1) her allegations of disability were not supported by her physical exams; (2) her treatment history did not support her claim of disability; (3) medications have been relatively effective at controlling her pain; and (4) her daily activities were not as limited as one would expect given her claim of disability. (Admin. R. 21-22, ECF No. 11.) Plaintiff disputes each of these reasons. (Pl.'s Mot. Attach. #1 Mem. P. & A. 9-17,

ECF No. 13.)  As discussed below, although not each of these reasons is clear and convincing, ALJ Poulose articulated sufficient clear and convincing reasons supported by substantial evidence in the record to reject Teresa H.'s pain testimony.

### 1. Plaintiff's physical examinations

The ALJ first found that Teresa H.'s allegations of disability were undermined by the treatment records from her physical exam findings, which "failed to note any clinical signs or findings of diminished sensation or decreased strength in the upper or lower extremities[]" and repeatedly showed "full range of motion of the lumbar spine and/or cervical spine." (Admin. R. 21, ECF No. 11.)  Teresa H. contends that the ALJ was not entitled to rely solely on objective medical evidence to reject her subjective pain testimony.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 12-13, ECF No. 13.)

Although an ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence," (see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ may consider whether the alleged symptoms are consistent with the medical evidence as one factor in her evaluation.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  In this case, the ALJ accurately referred to medical evidence in the record to support her finding that Plaintiff's physical examinations repeatedly showed that she had normal strength and sensation in her upper and lower extremities.  (See Admin. R. 21, ECF No. 11, citing id. at 278-81, 296-99, 303-06, 319-22, 342-45.)  ALJ Poulose also observed that on multiple occasions, Plaintiff had full range of motion in her lumbar and cervical spines.  (Id. at 21, citing id. at 278-81, 296-99, 303-06, 319-22, 342-45.)  Thus, the ALJ's observation that Plaintiff's physical examinations yielded normal results is supported by some evidence in the record.

Despite this, the Court cannot find that Plaintiff's normal physical exam findings constituted a clear and convincing reason to discount her pain allegations because Teresa

H. also exhibited abnormal findings during her examinations. She had "positive straight leg raise" results on at least two occasions, (see id. at 240, 321), and often exhibited muscle spasms in her back and neck, (see id. at 238, 240, 242, 257). Additionally, she showed decreased range of motion in her neck during at least two doctor visits, (see id. at 238, 273), contrary to the ALJ's statement that she had reduced cervical range of motion (on only one exam), (see id. at 21). This is not a case in which the medical evidence contained only normal findings. Rather, Teresa H.'s physical examinations yielded both normal and abnormal objective findings. The Court thus finds that Plaintiff's physical examination findings both support and detract from her subjective symptom allegations and thus do not constitute a clear and convincing reason to reject her testimony regarding the severity of her symptoms. See Lambert, 980 F.3d at 1277.

### 2.     Plaintiff's treatment history

Second, ALJ Poulose stated that Teresa H.'s treatment history did not support her allegations of disability because she had undergone only "conservative treatment" for her impairments. (Admin. R. 21, ECF No. 11.) Plaintiff argues that the ALJ's description of her treatment as "conservative" is contradicted by the fact that she underwent neck surgery, took narcotic pain medication, and received epidural injections. (Pl.'s Mot. Attach. #1 Mem. P. & A. 14-16, ECF No. 13.)

Receiving only "minimal, conservative treatment" is a valid reason to discredit a claimant's symptom testimony. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see also Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted); see also 20 C.F.R. § 404.1529(c)(3)(v) (2019) (treatment received for relief of pain relevant to evaluating symptoms). The ALJ is correct that much of Plaintiff's treatment, including non-steroidal anti-inflammatory drugs, muscle relaxants, physical therapy, and a TENS unit, are considered conservative.

1 See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).  But Plaintiff's use of
2 narcotics rendered the ALJ's statement that Teresa H. had "undergone only conservative
3 treatment" erroneous.  Medical evidence dated between February 5, 2018, and January
4 27, 2020, establishes that Plaintiff regularly took Norco for pain relief over the course of
5 at least two years.  (See Admin. R. 270, 282, 303, 319, 342, 413, 498, ECF No. 11; see
6 also id. at 39 (setting forth Plaintiff's March 11, 2020 hearing testimony that she was still
7 taking Norco.)  "The consistent use of Norco, a strong opioid medication, cannot
8 accurately be described as 'conservative' treatment." Bucknell v. Berryhill, Case No. ED
9 CV 18-0261 AS, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) (citing cases); but
10 see Childress v. Colvin, Case No. 13-cv-03252-JSC, 2014 WL 4629593, at *12 (N.D.
11 Cal. Sept. 16, 2014) ("It is not obvious whether the consistent use of [Norco] (for several
12 years) is 'conservative' or in conflict with Plaintiff's pain testimony . . . .").

13       The ALJ referred to Plaintiff's lumbar steroid injections and cervical epidural
14 steroid injections to support her finding that Teresa H. had only undergone conservative
15 treatment.  (See Admin. R. 21, ECF No. 11.)  Courts have characterized steroid epidural
16 injections as both conservative and not conservative, but in instances of limited
17 injections, as here, they may be considered conservative.  See Ruiz v. Berryhill, Case No.
18 CV 16-2580-SP, 2017 WL 4570811, at *5 (C.D. Cal. Oct. 11, 2017) (collecting cases);
19 Jones v. Comm'r of Soc. Sec. Admin., No. 2:12-cv-01714-KJN, 2014 WL 228590, at *7
20 (E.D. Cal. Jan. 21, 2014) (finding occasional use of epidural injections in conjunction
21 with anti-inflammatory medications may be considered conservative).  Nonetheless, the
22 Court agrees with caselaw holding that Norco taken regularly for a period of time cannot

be considered conservative treatment; therefore, the ALJ's second reason for discounting Plaintiff's pain testimony was not clear and convincing.[6]

### 3. Effectiveness of Plaintiff's medications and treatment

The third reason proffered by the ALJ to discount Teresa H.'s pain testimony was that "medications have been relatively effective in controlling [Plaintiff's] pain." (Admin. R. 21, ECF No. 11.)  The ALJ refers specifically to a January 27, 2020 treatment note indicating that Plaintiff experienced good pain control with her medication.  (Id. at 21-22.)  Teresa H. disagrees with this finding and contends that the medical record as a whole demonstrates "failed pain control with medication" and only temporary pain relief.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 15, ECF No. 13.)

In assessing a claimant's subjective symptoms, an ALJ may properly consider the "type, dosage, effectiveness, and side effects of any medication" a claimant has taken to alleviate pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(iv); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1001 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling . . . .").  In this case, the medications prescribed by Plaintiff's physicians helped her symptoms.  As ALJ Poulose indicated, Teresa H.'s primary care provider, Dr. Peter Strutz, noted in his January 10, 2020 treatment record that Plaintiff's pain was "controlled at present" with her medication regimen, which included Norco, Meloxicam, Flexeril, and Imitrex.  (Admin. R. 498, ECF No. 11.)  Prior to that, Plaintiff's physician, Dr. Jeffrey Petersen, reported on December 17, 2018, that his patient's lumbar and cervical conditions were "stable" and Plaintiff would schedule epidural injections and take non-steroidal anti-inflammatory drugs "when necessary." (Id. at 299.)

---

[6] Plaintiff argues that her neck surgery refutes the ALJ's finding that she underwent only conservative treatment.  Her neck surgery, a laminectomy at C5-C6, however, was performed in 1999, well before the onset date of November 3, 2017.  (See Admin. R. 368, ECF No. 11.)

Under the regulations, treatment other than medication is also pertinent to evaluating a claimant's pain testimony. See 20 C.F.R. § 404.1529(c)(3)(v). The medical record shows that although Teresa H. reported that the epidural injections did not permanently eliminate her pain, they did help her symptoms. (See Admin. R. 238, ECF No. 11 (medical record stating that "low back is greatly improved since her lumbar epidural steroid injection"); id. at 242 (treatment note reflecting that "low back pain is moderately improved since last epidural" and rating Teresa H.'s pain as one to five on a scale of ten); id. at 327 ("fairly good result[s]" with two previous epidural injections).) The use of a TENS unit also relieved Plaintiff's symptoms. (See id. at 254 (treatment record indicating that TENS unit has "helped tremendously").) Moreover, the medical evidence does not indicate that Plaintiff experienced any side effects from her treatments, other than constipation caused by Norco, for which Dr. Petersen prescribed Flovent. (Id. at 270, 273.)

In her argument against the ALJ's finding that medications effectively controlled her pain, Plaintiff contends that she was admitted into the hospital for pain control. (Pl.'s Mot. Attach. #1 Mem. P. & A. 15, ECF No. 13.) This is not an accurate depiction of the medical record, however, as Teresa H.'s hospital admission, from October 31, 2019, to November 2, 2019, was due to thyroidectomy surgery relating to Plaintiff's diagnosis of thyroid cancer, not her neck and back pain. (See Admin. R. 556-57, ECF No. 11.) Plaintiff also refers to a treatment record from October 4, 2017, as evidence that her pain was not controlled by medication, but this record predates her alleged onset date of November 3, 2017, and pertains to the use of Tramadol, (see id. at 357), which Plaintiff used before switching to the medications that more effectively controlled her symptoms.

Impairments that can be effectively controlled by medication or treatment may undermine a claim for disability. Warre, 439 F.3d at 1006. Here, the ALJ's rationale that

medications have been relatively effective in controlling Plaintiff's pain constituted a specific, clear, and convincing reason to discredit her symptom testimony.

### 4. Plaintiff's daily activities

Finally, ALJ Poulose found that Teresa H.'s daily activities were "not limited to the extent one would expect, given [Plaintiff's] complaints of disabling symptoms and limitations." (Admin. R. 22, ECF No. 11.) She pointed to Plaintiff's hearing testimony that "although she does not take out the trash or walk her dogs, she can cook, load the dishwasher, sweep occasionally, do laundry, water the yard, care for her dogs and cat, shop, and care for her husband following his knee replacement surgery." (Id.)

An ALJ may properly consider the claimant's daily activities in evaluating testimony regarding subjective pain. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. § 404.1529(c)(3)(i) (claimant's daily activities relevant to evaluating symptoms). The ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct, as well as whether the claimant engages in activities inconsistent with the alleged symptoms. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quotations and citations omitted) (superseded on other grounds by 20 C.F.R. § 404.1502(a) (2017)). "One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Nevertheless, "[e]ven where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113 (citations omitted); see also Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Plaintiff contends that the ALJ "mischaracterizes the record" regarding her daily activities by ignoring some aspects of her testimony. (Pl.'s Mot. Attach. #1 Mem. P. & A. 9-10, ECF No. 13.) She argues that the ALJ's summary ignores her testimony that if she drives for more than twenty to thirty minutes, her pain interferences with her driving; she will lie down after doing things around the house; she sits down in her shower when she needs to; she sometimes has a friend style her hair; she limits her shopping trips to a half hour; she experiences symptoms if she walks for more than a half hour; she has pain when picking up a gallon of water; and she loses her balance on stairs if she does not hold onto the railing. (Id., citing Admin. R. 34, 35, 37-38, 182, ECF No. 11.)

Based on an evaluation of the record as a whole, the Court concludes that the ALJ could reasonably determine that Teresa H.'s daily activities undermined her testimony that she was incapable of working. In addition to the activities discussed by the ALJ, the record reflects that Plaintiff can drive twenty or thirty minutes into town, take care of her personal needs, and attend religious services. (See id. at 34-36; see also Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").) Plaintiff's daily activities constituted a clear and convincing reason to discredit her testimony regarding the functional limitations caused by her symptoms.

When the ALJ provides valid reasons supported by the record for disbelieving a claimant's testimony, the provision of one or more invalid reasons is harmless error. See Molina, 674 F.3d at 1115. In this case, although not all reasons articulated by the ALJ meet the standard for discrediting Plaintiff's subjective symptom testimony, the ALJ articulated sufficient specific, clear, and convincing reasons supported by substantial evidence in the record to discount the severity of Plaintiff's symptoms.

/ / /

/ / /

### D.  Notice of New Authority

Plaintiff filed a Notice of New Authority that cites Collins v. Yellen, 594 U.S. ____, ____, 141 S. Ct. 1761, 210 L. Ed. 2d 432 (2021), and Seila Law, LLC v. Consumer Fin. Prot. Bureau, ___ U.S. ____, ____, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020), and refers to a July 8, 2021 Memorandum Opinion for the Deputy Counsel to the President regarding the scope of the President's constitutional authority to remove the Commissioner of Social Security [ECF No. 15].  The Court will not consider this supplemental authority because Plaintiff has made no showing how either case or the memorandum opinion supports her claim that the ALJ's decision regarding her disability claim was incorrect.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (stating that a party fails to adequately brief an issue when it is raised in a perfunctory manner without supporting arguments and authority); see also Maves v. First Horizon Home Loans, 461 Fed. App'x 636, 638 (9th Cir. 2011) (declining to address party's argument when her brief was "devoid of any reasoned argument[]" and the issue was "raised in . . . [a] perfunctory fashion").  Additionally, other courts have found these cases and the memorandum opinion irrelevant to the consideration of the merits in social security disability actions.  See Jon E.C. v. Kijakazi, Case No. EDCV 20-01257 PVC, 2021 U.S. Dist. LEXIS 197598, at *1 n.3 (Oct. 13, 2021) ("Having considered Plaintiff's submission, the Court finds that the authority cited therein would not affect the disposition of this case."); see also Keith P. v. Comm'r of Soc. Sec. Admin., Case No. 3:20-cv-05624-TLF, 2021 U.S. Dist. LEXIS 187242, at *9 (Sept. 29, 2021) ("[T]he Court finds that the authority would not affect the disposition of this case.").

Furthermore, if it was Plaintiff's intent to challenge the constitutionality of the statute governing the President's removal authority over the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), a recent decision by the Ninth Circuit addresses this issue.  In Kaufmann v. Kijakazi, ___ F.4th ____, 2022 WL 1233238 (9th Cir. Apr. 27,

2022), the Ninth Circuit held that the removal provision in § 902 was unconstitutional and severable.  Id., 2022 WL 1233238, at *4.  In deciding the appropriate remedy for the plaintiff, whose appeal to the Appeals Council was denied while former Commissioner Saul was serving under the unconstitutional removal statute, the court stated that "[a] party challenging an agency's past actions must [] show how the unconstitutional removal provision *actually harmed* the party[.]"  Id. at *5.  Here, as in Kaufmann, Plaintiff has not presented any evidence or articulated a plausible theory to show that the removal provision caused her any harm.  See id.  Therefore, "the unconstitutional provision has no effect on [her] case."  See id. at *6.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

This Order concludes the litigation in this matter.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  June 1, 2022

Hon. Ruben B. Brooks
United States Magistrate Judge